UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| GLENDA ATKINS, CHRYSTAL AKRIDGE, DARPHELIA AKRIDGE, DORIS GOODNER, AND CHICA ALEXANDER.<br><br>  Plaintiffs,<br><br>v.<br><br>LQ MANAGEMENT, LLC D/B/A LA QUINTA INN AND SUITES<br><br>  Defendant. | Civil Action No.3:13-cv-00562<br><br>Judge Kevin H. Sharp<br><br>Magistrate Judge Juliet Griffin |

## CHICA ALEXANDER'S RESPONSES TO STATEMENT OF UNDISPUTED MATERIAL FACTS

Defendant, LQ Management L.L.C. d/b/a La Quinta Inn and Suites ("Defendant" or "La Quinta") pursuant to Rule 56.01(b) of the Local Rules of Court, submits its Statement of Undisputed Material Facts as to Plaintiff Chica Alexander.[1]

1. On June 22, 2012, Plaintiff completed an application for employment as a housekeeper at La Quinta's Franklin property. Pl. Dep. pp. 28; 30, attached at Record Appendix ("RA")[2], Tab A; Ex. 1 to Pl. Dep., RA Tab C.

**RESPONSE:** Undisputed

2. The application for employment at La Quinta includes the following question: "have you ever been convicted of a felony or misdemeanor that has not been sealed, expunged, pardoned or statutorily eradicated?" Ex. 1 to Pl.'s Dep., RA Tab C.

---

[1] In this Statement of Facts, La Quinta presents only undisputed facts, or where facts are disputed, Plaintiff's version of the events. This statement is presented only for the purpose of La Quinta's Motion for Summary Judgment, and La Quinta does not waive the right to present additional evidence or evidence that presents facts in a light most favorable to La Quinta, as opposed to Plaintiff, if appropriate.

[2] Record Appendix filed contemporaneously herewith.

**RESPONSE:** Undisputed

3. In response to this question, Plaintiff checked the "no" box, knowing that this was a false statement. Pl.'s Dep. p. 100, RA Tab A.

**RESPONSE:** Undisputed

4. Indeed, Plaintiff has been convicted of a felony and several misdemeanors, none of which had been sealed, expunged, pardoned, or statutorily eradicated. Pl.'s Dep. p. 100, RA Tab A; Exs. 10 and 11 to Pl.'s Dep., RA Tabs G and H.

**RESPONSE:** Undisputed

5. Specifically, Plaintiff has been convicted of felony possession of cocaine in the amount of 7.5 grams. Pl.'s Dep. p. 100, RA Tab A; Exs. 10 and 11 to Pl.'s Dep., RA Tabs G and H.

**RESPONSE:** Undisputed

6. Plaintiff has also been convicted of driving with a suspended license, violating probation for a worthless check, and prostitution. Pl.'s Dep. pp. 99-100, RA Tab A; Ex. 13 to Pl.'s Dep., RA Tab H.

**RESPONSE:** Undisputed

7. Despite the fact that Plaintiff had been convicted of a felony and numerous misdemeanors, Plaintiff represented to La Quinta that she had *never* been convicted of *any* crime. Pl.'s Dep. pp. 101, 122, RA Tab A.

**RESPONSE:** Undisputed

8. Plaintiff then certified and affirmed that everything in her application was true, complete and correct, and agreed that La Quinta shall not be liable in any respect if her

employment was terminated because of falsity of statement, answers or omissions made in the application. Pl.'s Dep. pp. 122-123, RA Tab A; Ex. 1 to Pl.'s Dep., RA Tab C.

**RESPONSE:** Undisputed

9. Upon Plaintiff's hire, La Quinta provided Plaintiff with a copy of its Employee Handbook, which contains an Equal Employment Opportunity policy as well as a Policy Prohibiting Harassment and Retaliation. Pl.'s Dep. pp. 32-33, RA Tab A.

**RESPONSE:** Undisputed

10. The Equal Employment Opportunity policy provides:

> La Quinta believes in equal employment opportunity for all employees and applicants. Our Company's success depends on the effective utilization of qualified individuals regardless of their race, creed, color, religion, sex, age, sexual orientation, ancestry, national origin, disability, veteran status or any other status protected by law.

Plaintiff's Dep. p. 35, RA Tab A; Ex. 2 to Darphelia Akridge's Dep., RA Tab J.

**RESPONSE:** Undisputed

11. The Policy Prohibiting Harassment and Retaliation states:

> La Quinta is committed to providing a work environment where employees are treated with courtesy, respect and dignity. Accordingly, La Quinta does not tolerate any form of discrimination, harassment, retaliation, joking remarks or other abusive conduct by or against employees, contractors, clients, guests, candidates, vendors, third parties or any other individuals who conduct business with La Quinta because of their race, color, sex, religion, national origin, age, disability, sexual orientation, marital status, citizenship status, veteran status, or any other category protected by law, or because an individual complained of harassment or discrimination.

Plaintiff's Dep. p. 35, RA Tab A; Ex. 2 to Darphelia Akridge's Dep., RA Tab I.

**RESPONSE:** Undisputed

12. In addition, La Quinta maintains a comprehensive "Open Door Policy" that can be found in the Employee Handbook and provides multiple options for an employee to complain of discrimination, including the "LQ HelpLine," which is a 24-hour telephone hotline employees may utilize to voice any problems or complaints regarding discrimination or any other employment-related issue. Plaintiff's Dep. p. 35, RA Tab A; Ex. 2 to Darphelia Akridge's Dep., RA Tab J.

**RESPONSE:** Undisputed

13. Plaintiff acknowledged receiving the Employee Handbook on June 23, 2012. Pl.'s Dep. pp. 32-33, RA Tab A; Ex. 3 to Pl.'s Dep., RA Tab D.

**RESPONSE:** Undisputed

14. Plaintiff knew that she could call La Quinta if she ever had any complaints because of the posted sign on the side of the telephone in the laundry room. Pl.'s Dep. p. 36, RA Tab A.

**RESPONSE:** Undisputed

15. Plaintiff, who is African-American, worked as a housekeeper, in laundry, and occasionally filled in as an assistant housekeeping supervisor at the pay rate of $8.08 an hour. Pl.'s Dep. p. 86, RA Tab A.

**RESPONSE:** Undisputed

16. At the Franklin location, Jeff Campbell, who is Caucasian, was the general manager, Michelle Armour, who is African-American was the assistant general manager, and Plaintiff Glenda Atkins, who is African-American, was the housekeeping supervisor. Pl.'s Dep. p. 39-40, RA Tab A.

**RESPONSE:** Undisputed

17. When Atkins decided to work only on weekends, Plaintiff reported to Johna Lee, who is African-American, who served as the housekeeping supervisor. Pl.'s Dep. 40-41, RA Tab A.

**RESPONSE:** Undisputed

18. Plaintiff rode with Plaintiffs Goodner and/or Crystal Akridge every day to work at the Franklin location. Pl.'s Dep. pp. 44-45, RA Tab A.

**RESPONSE:** Undisputed

19. On November 28, 2013, Plaintiff filed a Charge with the Tennessee Human Rights Commission ("THRC"). Pl.'s Dep. p. 71, RA Tab A; Ex. 5 to Pl.'s Dep., RA Tab E.

**RESPONSE:** Undisputed

20. At the time she filled out her statement, Plaintiff felt that it was complete. Pl.'s Dep. pp. 70-73, RA Tab A.

**RESPONSE:** Undisputed

21. In her Charge, Plaintiff made allegations regarding her perceived disparity of hours vis a vis Tanya Kelly, who is Caucasian. Pl.'s Dep. pp. 73-74, RA Tab A.

**RESPONSE:** Undisputed

22. Plaintiff also made allegations that Mr. Campbell told her to drink out of the water fountain which "make [sic] me seem like he was saying I was poor because I come from Nashville." Pl.'s Dep. p. 75, RA Tab A.

**RESPONSE:** Disputed, she also attributed the comment to her color. Alexander Depo p. 75-76.

23. Plaintiff did not assert any other allegations in this Charge. Ex. 5 to Pl.'s Dep., RA Tab E.

5

**RESPONSE:** Disputed, she stated that Mr. Campbell does not give girls of color a chance. She also stated that he acts like he doesn't like people like her, and they were nothing to him. Same exhibit cited by defendant.

24. Plaintiff later filed a second Charge with the THRC on December 17, 2012, alleging that she was not receiving supervisor pay and that lunch breaks were being taken out of her pay check. Pl.'s Dep. pp. 90-91, RA Tab A; Ex. 7 to Pl.'s Dep., RA Tab F.

**RESPONSE:** Undisputed

25. The Assistant Head Housekeeper role is not an increased pay position. Declaration of Stacy Babl[3] ("Babl Decl.") ¶6.

**RESPONSE:** Undisputed

26. Less than one month later, on January 9, 2013, Plaintiff left La Quinta because of her "transportation problem [sic]" and because she "wanted [her] own car." Pl.'s Dep. pp. 46-47, RA Tab A.

**RESPONSE:** Undisputed

27. Plaintiff called Mr. Campbell and told him that she was quitting because of her transportation. Pl.'s Dep. p. 47, RA Tab A.

**RESPONSE:** Undisputed

28. After she voluntarily quit working at La Quinta, Plaintiff stayed home to take care of her grandchildren until she was incarcerated at CCA for violating her probation. Pl.'s Dep. p. 47, RA Tab A.

**RESPONSE:** Undisputed

---

[3] The Declaration of Stacy Babl is filed contemporaneously herewith.

29. On January 10, 2013, Manager of People Solutions Stacy Babl traveled from her home base of Milwaukee, Wisconsin to the Franklin location to conduct an in-person investigation of the claims that Plaintiff asserted in her Charges, as well as the allegations set forth in the Charges filed by the other plaintiffs in this matter. Babl Decl. ¶ 8.

**RESPONSE:** Undisputed

30. Babl interviewed seven employees, including Mr. Campbell, Armour, Lee, Kelly, Kathy Thompson, and Plaintiffs Goodner, C. Akridge, and Atkins. Babl Decl. ¶ 9.

**RESPONSE:** Undisputed

31. Although Babl tried to interview Plaintiff and Plaintiff D. Akridge, she was unable to do so as they had already resigned from their employment with La Quinta by this date. Babl Decl. ¶ 9.

**RESPONSE:** Undisputed

32. In addition to interviewing witnesses, Babl investigated Plaintiff's claims by reviewing time records. Babl Dep. pp. 55-56, RA Tab B.

**RESPONSE:** Undisputed

33. After reviewing these records, Babl was unable to substantiate Plaintiff's claims regarding any disparity regarding scheduling or number of hours worked. Babl Dep. pp. 56-57, 59, 67, 69, RA Tab B.

**RESPONSE:** Undisputed

34. Because Ms. Babl was unable to substantiate any of Plaintiff's allegations, no further action was taken. Babl Decl. ¶ 10.

**RESPONSE:** Undisputed, only as to time records. Ms. Babl intentionally only asked

7

about the charge dealing with preferential treatment with race as a motive. She filed to follow up on racial comments. Babl Depo ex1 p. 29, 36-39.

35. Although Plaintiff claims that she told Mr. Campbell, Lee, Armour, and La Quinta's Human Resources Department about certain alleged racial remarks made by Mr. Campbell, La Quinta is not in possession of any record of any alleged complaints by Plaintiff. Babl Decl. ¶ 13; Babl Dep. pp. 21-24, RA Tab B.

**RESPONSE:** Undisputed, the verbal reporting citations were left out and appear in Ms. Alexanders' deposition at p. 50, 59, 62, 64-68, 69-70.

36. According to Plaintiff, Mr. Campbell did not make any racial remarks to Plaintiff when Atkins was her supervisor. Pl.'s Dep. p. 114, RA Tab A.

**RESPONSE:** Disputed, Ms. Alexander referenced Glenda Atkins, and racial comments being made, Alexander Dep. p. 52, 57-59.

37. Plaintiff believes that Mr. Campbell's first alleged comment occurred around November or December of 2012, when he told her to "go drink out of the water fountain because [she was] from Nashville and [Nashvillians] drink out of the sewer water. The spring water was for Franklin." Pl.'s Dep. p. 49-50, RA Tab A.

**RESPONSE:** Undisputed

38. Plaintiff further claims that she was required to use the back door of the property when Kelly and Thompson were not required to do so. Pl.'s Dep. pp. 54-55, RA Tab A.

**RESPONSE:** Undisputed

39. Mr. Campbell never told Plaintiff that she had to use the back door; instead, Plaintiff claims that Lee told her to use the back door. Pl.'s Dep. p. 57, RA Tab A.

8
Case 3:13-cv-00562 Document 56-1 Filed 06/11/14 Page 8 of 12 PageID #: 3617

**RESPONSE:** Undisputed

40. Plaintiff often went through the back door because her rides, Goodner and C. Akridge, parked their cars in the back. Pl.'s Dep. p. 55, RA Tab A.

**RESPONSE:** Undisputed, she used the back door but she stated I just did what I was supposed to do. Alexander Depo p.54.

41. Plaintiff was never disciplined for going through the front door during her employment with La Quinta. Pl.'s Dep. pp. 54-55, RA Tab A.

**RESPONSE:** Undisputed, but she complied with the back door instruction. Alexander Depo p.54.

42. Plaintiff claims that Mr. Campbell used to "talk about black people hair" and "black people eating chitlins all the time"; said that he felt like "smacking [Atkins'] black ass;" and that he wanted "Obama to go back where he came from [Africa]." Pl.'s Dep. p. 52, RA Tab A.

**RESPONSE:** Undisputed

43. Plaintiff further claims that she heard Mr. Campbell tell C. Akridge that "she must have been sitting by a white person during a test to cheat off in order to pass"; "how could she have a $100 bill, since [African-Americans] all get welfare checks"; and said "Mexican people work harder than us." Pl.'s Dep. pp. 110,127, RA Tab A.

**RESPONSE:** Undisputed

44. Plaintiff admits that she did not report any of these comments to anyone. Pl.'s Dep. p. 56, RA Tab A.

**RESPONSE:** Disputed, the cited position of the deposition only addresses her hair. Refer back to material facts number 35, evidence reports to several people.

45. Plaintiff never heard Mr. Campbell say the "n-word." Pl.'s Dep. p. 51-52, RA Tab A.

**RESPONSE:** Undisputed

46. Upon receiving the Complaint filed on May 14, 2013 detailing these claims, La Quinta again sent Babl to the Franklin location to investigate the allegations of racial discrimination, retaliation and harassment. Babl Decl. ¶ 11.

**RESPONSE:** Undisputed

47. During her investigation, Babl interviewed twelve employees, including Mr. Campbell, Armour, and Lee. Babl Decl. ¶12.

**RESPONSE:** Undisputed

48. Plaintiffs C. Akridge, Goodner, and Atkins refused to participate in the investigation. Babl Decl. ¶12.

**RESPONSE:** Disputed, the plaintiffs asserted the right to have their attorney present and sought relief before Magistrate Griffin docket entry 4.

49. During her investigation, Babl interviewed twelve employees, including Mr. Campbell, Armour, and Lee. Babl Decl. ¶12.

**RESPONSE:** Undisputed

50. La Quinta was unable to substantiate any of the allegations set forth in the Complaint. Babl Dep. p. 117, RA Tab B.

**RESPONSE:** Disputed, this is only the opinion and conclusionary statement by H.R. personnel after litigation was filed. Ms. Babl further confirmed some of the statements were made. Campbell admitted certain statements including: the chitlins comment, stating that there were a lot of black employees, that he wanted to slap Ms. Atkins,

discussing the hair comments, telling Ms. Alexander to drink out the water fountain, its Nashville water, talking about the $100.00 dollar bill, being in a conversation where Mexicans working harder than blacks was discussed, discussing President Obama was of mixed race, saying that Crystal cheated on a test. Babl Dep. Ex 1 p. 88-93.

11
Case 3:13-cv-00562   Document 56-1   Filed 06/11/14   Page 11 of 12 PageID #: 3620

Respectfully submitted,

s/ Stephen Crofford
Stephen Crofford (# 12039)
Mary Parker (# 6016)
PARKER & CROFFORD
1230 2nd Avenue South
Nashville, TN  37210
(615) 244-2445
Attorney for Plaintiffs

CERTIFICATE OF SERVICE

I certify that on June 11, 2014, a copy of the foregoing was served via the Court's electronic filing system upon the following:

Jennifer S. Rusie
Charlotte S. Wolfe
SunTrust Plaza, Suite 1200
401 Commerce Street
Nashville, TN 37219

s/ Stephen Crofford
Stephen Crofford