UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| GLENDA ATKINS, CHRYSTAL AKRIDGE, DARPHELIA AKRIDGE, DORIS GOODNER, AND CHICA ALEXANDER, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 3:13-00562 Judge Sharp |
| LQ MANAGEMENT, LLC D/B/A LA QUINTA INN AND SUITES, | ) ) ) | |
| Defendant. | ) | |

## MEMORANDUM

This employment dispute, removed from the Williamson County Circuit Court, is brought by five former employees of the La Quinta Inn and Suites in Franklin, Tennessee. Plaintiffs Glenda Atkins, Chrystal Akridge, Darphelia Akridge, Doris Goodner and Chica Alexander all claim that they were discriminated against and subjected to a hostile work environment in violation of the Tennessee Human Rights Act ("THRA"), Tenn. Code Ann. § 4-21-101 *et seq.*, most (if not all) claim that they were retaliated against in violation of the THRA, and two claim that they were constructively discharged.

Defendant LQ Management, LLC d/b/a La Quinta Inn and Suites has filed a separate Motion for Summary Judgment (Docket Nos. 30, 35, 40, 45 & 51) with respect to each Plaintiff, to which Plaintiffs have filed a consolidated response (Docket No. 56) and Defendant has replied (Docket No. 57). For the reasons that follow, summary judgment will be granted on all of Plaintiffs' claims, except each Plaintiff's claim that she was subjected to working in a racially hostile environment.

1

**I.**

In their consolidated response, Plaintiffs write:

> . . . Although the Defendant has filed separate memoranda of law in support of their five separate motions for summary judgment, the relevant law is the same for each plaintiff in this case. Therefore, for efficiency, Plaintiffs are filing this single Memorandum. Plaintiffs would also note that, since the defendant filed each complete plaintiff's deposition with the court, that all references to plaintiff's depositions, herein, can be found in the depositions filed with the Defendant's Motion for Summary Judgment.
>
>     *       *       *
>
> Although each of the Plaintiffs alleged several causes of action, including retaliation, disparate treatment and hostile work environment, all of the relevant facts apply to their claims of a hostile work environment, and, the Plaintiffs, therefore, rely upon all facts alleged regarding the various causes of action, and proceed forward solely upon the hostile work environment claims.

(Docket No. 56 at 1-2). The last sentence seems to suggest that Plaintiffs are pursuing only their hostile work environment claims, a suggestion that is supported by the fact that the memorandum focuses exclusively on such claims. Further, while Plaintiffs have filed responses to each of the Statements of Undisputed Facts submitted by Defendants in support of its motion for summary judgment as to each Plaintiff, the vast majority of facts that Plaintiffs dispute center on whether the Franklin La Quinta Inn was a hostile place for black employees to work. Plaintiffs make no effort to contest such things as the time records that appear to refute their claims regarding disparity in room assignments and scheduling, other than pointing out that they believe they were required to clean more rooms and work fewer hours than white housekeepers. Moreover, the virtually identical affidavits filed by four of the Plaintiffs are directed exclusively at their allegations that General Manager Jeff Campbell allegedly made racially offensive comments.

Despite everything suggesting that they have abandoned their claims for race discrimination, retaliation, and constructive discharge, Plaintiffs conclude their consolidated response by broadly

asserting that "defendant's summary judgment motions should be denied, and this case move [sic] forward to trial." Id. at 23. To the extent Plaintiffs are challenging Defendant's Motions for Summary Judgment on any of their claims apart from their claims relating to a hostile work environment, their consolidated response is insufficient under both this Court's Local Rules and Rule 56 of the Federal Rules of Civil Procedure.

## II.

Local Rule 7.01 states that a "party opposing a motion shall serve and file a response," and that a "failure to file a timely response shall indicate there is no opposition to the motion." L.R. 7.01(b). Similarly, Rule 56 of the Federal Rules of Civil Procedure provides that "[i]f the opposing party does not . . . respond, summary judgment should, if applicable, be entered against that party." Fed. R. Civ. P. 56(e)(2).

"Rule 56(e)(2) leaves no doubt about the obligation of a summary judgment opponent to make her case with a showing of facts that can be established by evidence that will be admissible at trial." Alexander v. CareSource, 576 F.3d 551, 558 (6th Cir. 2009). "In fact, '[t]he failure to present any evidence to counter a well-supported motion for summary judgment alone is grounds for granting the motion.'" Id. (quoting Everson v. Leis, 556 F.3d 484, 496 (6th Cir. 2009)).

In addition to Alexander, there is further authority for the proposition that failing to respond to a properly supported arguments advanced in a motion for summary judgment means that the opponent concedes the argument and that summary judgment on the claim is appropriate. See e.g., Campbell v. Hines, 2013 WL 7899224, at *4 (6th Cir. Aug. 8, 2013) ("The district court properly concluded that Campbell had abandoned his hostile work environment and retaliation claims. . . . In light of Campbell's failure to address the defendants' arguments in his response to the summary

3

judgment motion, the district court properly declined to consider the merits of the claims); Clark v. City of Dublin, 178 F. App'x 522, 524-525 (6th Cir. 2006) (where plaintiff "did not properly respond to the arguments asserted against his ADEA and ADA claims," the "district court properly granted summary judgment because [plaintiff] failed to meet his Rule 56 burden"). However, the Sixth Circuit has also stated:

> 'a district court cannot grant summary judgment in favor of the movant simply because the adverse party has not responded. The Court is required, at a minimum, to examine the movant's Motion for Summary Judgment to ensure that he has discharged [his initial] burden .'. . . The federal rules require that the party filing a Motion for Summary Judgment 'always bears the burden of demonstrating the absence of a genuine issue as to a material fact.'

Stough v. Mayville Cmty Sch., 138 F.3d 612, 614 (6th Cir.1998) (quoting Carver v. Bunch, 946 F.2d 451, 452 (6th Cir. 1991)); see also Miller v. Shore Finan. Serv., Inc., 141 F. App'x 417, 419 (6th Cir. 2005).

## III.

"The party requesting summary judgment bears an initial burden of demonstrating that no genuine issue of material fact exists, which it must discharge by producing evidence to demonstrate the absence of a genuine issue of material fact or 'by showing . . . that there is an absence of evidence to support the nonmoving party's case.'" Burdett-Foster v. Blue Cross Blue Shield of Mich., 2014 WL 3719111, at *6 (6th Cir. July 29, 2014) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323–25 (1986)). Defendant has met its burden with respect to Plaintiffs' claims for race discrimination, retaliation, and constructive discharge.

### A.

"To prevail on an intentional discrimination claim under the THRA, a plaintiff must first

establish a *prima facie* case of intentional discrimination or retaliation, which is accomplished by a showing of disparate or differential treatment." Harris v. Metro. Dev. & Hous. Agency, 2014 WL 1713329, at *4 (Tenn. Ct. App. April 28, 2014). "[T]o establish a claim of race discrimination, a plaintiff must show: (1) she was a member of a protected class; (2) she was qualified for the position; (3) she suffered an adverse employment action; and (4) she was treated differently than similarly situated employees outside the protected class." Stewart v. Cadna Rubber Co., 2014 WL 1235993, at *8 (Tenn. Ct. App. Mar. 26, 2014). To establish a claim of retaliation under the THRA, the plaintiff must prove that: "(1) the plaintiff engaged in a protected activity; (2) the exercise of the plaintiff's protected rights was known to the defendant; (3) the defendant thereafter took an adverse job action against the plaintiff; and (4) there was a causal connection between the protected activity and the adverse job action." Sykes v. Chattanooga Hous. Auth., 343 S.W.3d 18, 29 (Tenn. 2011).

"If the plaintiff satisfies this burden [of establishing a *prima facie* case], the burden shall then be on the defendant to produce evidence that one (1) or more legitimate, nondiscriminatory reasons existed for the challenged employment action." Tenn. Code Ann. § 4-21-311(e). "If the defendant produces such evidence, the presumption of discrimination or retaliation raised by the plaintiff's *prima facie* case is rebutted, and the burden shifts to the plaintiff to demonstrate that the reason given by the defendant was not the true reason for the challenged employment action and that the stated reason was a pretext for illegal discrimination or retaliation." Id.

**B.**

"To demonstrate constructive discharge, a plaintiff must adduce evidence to show that (1) 'the employer ... deliberately create[d] intolerable working conditions, as perceived by a reasonable person,' (2) the employer did so 'with the intention of forcing the employee to quit,' and (3) 'the

employee ... actually quit.'" Savage v. Gee, 665 F.3d 732, 739 (6th Cir. 2012) (quoting, Moore v. KUKA Welding Sys. & Robot Corp., 171 F.3d 1073, 1080 (6th Cir. 1999)). "A constructive discharge requires a determination that 'working conditions would have been so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign.'" Smith v. Henderson, 376 F.3d 529 (6th Cir. 2004) (quoting Held v. Gulf Oil Co., 684 F.2d 427, 432 (6th Cir. 1982)). "'Whether a reasonable person would have feel compelled to resign depends on the facts of each case, but [a court may] consider the following factors relevant, singly or in combination: '(1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) reassignment to work under a younger supervisor; (6) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (7) offers of early retirement or continued employment on terms less favorable than the employee's former status.'" Logan v. Denny's, Inc., 259 F.3d 558, 569 (6th Cir. 2001) (quoting Brown v. Bunge Corp., 207 F.3d 776, 782 (5th Cir. 2000)).

## C.

Defendant has carried its initial burden by arguing and providing citations to the record for the following propositions:

- Doris Godner's discrimination claim is based upon her perception that she worked fewer hours in the laundry room than Kathy Thompson, but Plaintiff was not similarly situated to Ms. Thompson because the latter sometimes worked full-time in the laundry room while Plaintiff worked both in the laundry room and as a housekeeper. Further, the difference between the number of hours worked by Plaintiff and Ms. Thompson was *de minimus*, particularly when one considers the months that Ms. Thompson was on FMLA leave and did not work in the laundry room while Plaintiff did.

  Ms. Godner's retaliation claims fail because she cannot show a causal connection between her filing this lawsuit and her termination from employment

some nine months later, after it was discovered she lied on her application about her criminal past. This is itself a legitimate reason for dismissal, which Plaintiff has not shown to be pretextual. Her claim thather hours were reduced after her charge was filed fails because she does not show that the one assigning the hours had knowledge of that protected activity and, in any event, occupancy at the hotel is lower during the winter months, making the need for housekeeping services also lower.

- Darphelia Akridge's discrimination claim based upon the allegation that she was treated differently than two others fails because (1) she did not work with one of the comparators during the same time frame; and (2) the claim that she worked fewer hours and had to clean more rooms than the other comparator is belied by the records, which show roughly that Plaintiff cleaned 100 more rooms, but also worked some 50 hours more.

    Ms. Akridge's constructive discharge claim fails from an objective standpoint because she does not claim to have been singled out for harsher treatment, and neither the four other Plaintiffs or the other black employees at the hotel felt compelled to resign.

- Chrystal Akridge's discrimination claim fails because the time keeping records show she often worked more hours that one of her comparators, and was not similarly situated to the other comparator who had far more duties than Plaintiff (*i.e.* Assistand Head Housekeeper, Room Attendant and Laundry Attendant versus Room Attendant).

    Her retaliation claims regarding reduced hours fail because they are based on the same unsupported premise in the Amended Complaint as Ms. Godner's retaliation claim (i.e., Mr. Campbell "retaliated by cutting the hours of some of the employees that chose to remain working" at the hotel) and because of the seasonal differences in hotel occupancy. Her retaliation claim based on her termination fails because (1) Defendant has offered a legitimate non-discriminatory reason for its action – insubordination, (2) Plaintiff has offered nothing but her own opinion that she was never insubordinate; and (3) Defendant made an informed decision based upon witness statements that Plaintiff had been insubordinate on several occasions.

- Chica Alexander's discrimination claim fails for the same reasons that Chrystal Akridge's fails – the inability to show substantial similarity with a

7

comparator, or that she actually worked fewer hours than her comparators.

Her constructive discharge claim fails because she specifically testified in her deposition that she left La Quinta because of her "transportation problem," that she "just was tired of depending on people" to drive her to work, and that she told Mr. Campbell that she "was quitting because of my transportation." (Alexander Depo. Docket No. 38-1 at 46-47).

- Glenda Atkins's discrimination claim fails because, while the Amended Complaint generally asserts disparate treatment of black housekeepers in relation to white housekeepers in terms of hours and the number of rooms they were assigned to clean, as Head Housekeeper, Plaintiff did not clean rooms at the Franklin La Quinta.

   Her retaliation claim fails because she asked for reduced hours (around the same time that she filed her charge) because she was working full-time at Vanderbilt and asked to work only weekend hours at La Quinta.

Because Defendant has carried its initial burden, Plaintiffs cannot "'rest upon [their . . . pleadings, but rather must set forth specific facts showing that there is a genuine issue for trial.'" Burdett-Foster, 2014 WL 3719111, at *6 (quoting Moldowan v. City of Warren, 578 F.3d 351, 374 (6th Cir.2009)). "A party asserting a genuine issue of material fact must support this argument either by 'citing to particular parts of materials in the record' or by 'showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.'" Id. (quoting Fed. R. Civ. P. 56(c)(1)). Plaintiffs have wholly failed to do so with regard to their race discrimination, retaliation, and constructive discharge claims. Thus, summary judgment is warranted on all those claims as to each Plaintiff, leaving for consideration Plaintiffs' claims that they were subjected to a hostile work environment.

**IV.**

"The intent of the THRA is to provide for execution within Tennessee of the policies

8

embodied in the federal civil rights statutes," Lynch v. City of Jellico, 205 S.W.3d 384, 399 (Tenn. 2006), and, therefore, "THRA claims are analyzed in the same manner as claims brought under Title VII of the Civil Rights Act of 1964," Marpaka v. Hefner, 289 S.W.3d 308, 313 (Tenn. Ct. App. 2008) (collecting cases). After all, the THRA, like Title VII, was enacted to "[s]afeguard all individuals within the state from discrimination because of race, creed, color, religion, sex, age or national origin in connection with employment," and to "[p]rotect their interest in personal dignity and freedom from humiliation[.]" Tenn. Code Ann. § 4-21-101(a)(2) & (a)(3).

"It is beyond dispute that both the Federal and State Acts apply to claims of discrimination based on the existence of a hostile work environment." Campbell v. Florida Steel Corp., 919 S.W.2d 26, 31 (Tenn. 1996). "To survive a motion for summary judgment on a hostile work environment claim, a plaintiff must establish: (1) the plaintiff was a member of a protected class, (2) the plaintiff was subjected to unwelcome harassment based on [race], (3) the harassment had the effect of unreasonably interfering with h[er] work performance and creating an objectively intimidating, hostile, or offensive work environment, and (4) there exists some basis for liability on the part of the employer." Owhor v. St. John Health-Providence Hosp., 503 F. App'x 307, 312 (6th Cir. 2012) (citing Gallagher v. C.H. Robinson Worldwide, Inc., 567 F.3d 263, 270 (6th Cir. 2009)). "The touchstone of any hostile work environment claim . . . is whether 'the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" Khamati v. Sec'y of Dept. of the Treasury 557 F. App'x 434, 442-43 (6th Cir. 2014) (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993)).

To determine whether workplace harassment is sufficiently severe or pervasive, the Court

9

is to consider the "totality of the circumstances." Williams v. Gen. Motors, 187 F.3d 553, 562 (6th Cir. 1999). The Court is also required to utilize both an objective and subjective test: "the conduct must be severe or pervasive enough to create an environment that a reasonable person would find hostile or abusive and the victim must subjectively regard the environment as abusive." Bowman v. Shawnee State Univ., 220 F.3d 456, 462 (6th Cir. 2000). "Among the factors to be considered are 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" Clark v. United Parcel Serv., Inc., 400 F.3d 341, 352 (6th Cir. 2005) (quoting, Harris 510 U.S. at 23).

The Court has read each Plaintiff's deposition in its entirety and the allegations in those depositions (if shown to be true) support the contention that Plaintiffs were subjected to a racially offensive environment at the hands of Mr. Campbell. Comments and actions attributed to Mr. Campbell by Plaintiff include, but are not limited to, him (1) stating that he did not want to hire certain people because they were black; (2) wanting to hire a busload of Mexicans because they were harder workers than African-Americans; (3) wanting to slap a housekeeper's "black ass"; (4) requiring black (but not white) employees to enter and exit through the back door, and park at the back of the building; (5) assigning whites (but not blacks) to work the first floor and in the lobby; (6) providing white employees with cookies and water, but telling black employees that they should drink from the water fountain because it was Nashville sewer water; (7) asking whether the black employees were going to eat chitlins at Thanksgiving; (8) stating President Obama should have stayed in (or should go back to) Africa; (9) asking whether a hair weave was horsehair; (10) questioning whether a black employee had copied from a "white girl" in order to pass as test; (11)

using the "N-word"; (12) questioning whether a black employee's $100 bill was real and how the employee came to possess it since black people receive welfare checks; (13) suggesting that "Mother's Day" was the first of the month because that is when welfare checks were received; (14) stating that he did not want black employees in the kitchen where guests ate breakfast; (15) making jokes about blacks living in the projects; and (16) stating that he thought some of the black employees were thieves.

The Court recognizes that not all of the employees heard all of the statements and that some employee's allegations (if true) are stronger than others. For example, Darphelia Akridge worked at the Franklin La Quinta for only 2½ months and, in her deposition, referenced only the water bottle/water fountain, cookies, rear door, chitlins, cheating, Mother's day/welfare check, and Obama/Africa comments. See Primm v. Primm v. Auction Broadcasting Co., 2012 WL 13930, at *7 (M.D. Tenn. Jan. 4, 2012) (citing cases for the proposition that incidents that occur infrequently and over a short period of time may not suffice to establish a hostile work environment). The Court also recognizes that some of the comments were not directed at each Plaintiff, and some were not overtly racist. Bowman, 220 F.3d at 462 ("while [plaintiff] recites a litany of perceived slights and abuses, many of the alleged harassing acts cannot be considered in the hostile environment analysis because [plaintiff] has not shown that the alleged harassment was based upon his status as a male"); Black v. Zaring Homes, Inc., 104 F.3d 822, 825 (6th Cir. 1997) ("not all workplace conduct that has sexual overtones can be characterized as harassment and forbidden by statute").

However, the inquiry into whether a working environment is hostile is not subject to a "mathematically precise test," Harris, 510 U.S. at 22, and there is no bright line "'between a merely unpleasant working environment . . . and a hostile or deeply repugnant one,'" McPherson v. City

11

of Waukegan, 379 F.3d 430, 438 (7th Cir. 2004) (citation omitted). In this regard, the Court rejects Defendant's reliance on Galeski v. City of Dearborn, 435 F. App'x 461 (6th Cir. 2012), for the proposition that Plaintiffs cannot establish a hostile work environment claim because they have not shown that the allegedly racially charged atmosphere negatively affected "their abilities to perform their job duties." (Docket No. 57 at 4). "[T]he totality of the circumstances" in Galeski "amount[ed] to no more than several offhand comments and simple teasing in the workplace." Id. at 468. The allegations here are far different.

Moreover, a working environment need not be "hellish" to establish a claim; "something short of the Ninth Ring" may violate anti-harassment statutes. Jackson v. County of Racine, 474 F.3d 493, 500 (7th Cir. 2007). As the Supreme Court has stated:

> Title VII comes into play before the harassing conduct leads to a nervous breakdown. A discriminatorily abusive work environment, even one that does not seriously affect employees' psychological well-being, can and often will detract from employees' job performance, discourage employees from remaining on the job, or keep them from advancing in their careers. Moreover, even without regard to these tangible effects, the very fact that the discriminatory conduct was so severe or pervasive that it created a work environment abusive to employees because of their race, gender, religion, or national origin offends Title VII's broad rule of workplace equality.

Harris, 510 U.S. at 21. See also Williams v. CSX Transp. Co., Inc., 533 F. App'x 637, 641 (6th Cir. 2013) (stating that "[c]onduct need not be both pervasive and severe to constitute a hostile environment," and that "[c]omments and conduct need not be directed at the plaintiff to be sufficiently severe or pervasive to constitute a hostile environment").

In deciding to deny summary judgment on Plaintiffs' hostile work environment claims, the Court has also considered what Defendant characterizes as Plaintiffs' "misguided attempt to save their claims through inadmissible affidavit testimony that all five Plaintiffs discussed every allegedly offensive comment by Mr. Campbell (which they now claim occurred multiple times each week),

12

and that therefore, they each had knowledge of the other's allegations." (Docket No. 57 at 3). This argument comes from the affidavits submitted by four of the five Plaintiff in which they each state:

> 5. The other four plaintiffs and I discussed the racially offensive comments made by Mr. Campbell at work as set out in our complaint in paragraph number 14 a-o. These discussions occurred while I was working for the defendant and prior to the litigation being filed.
>
> 6. When Mr. Campbell would make an offensive comment, the other four plaintiffs and I would discuss the offensive comments made among all of us.

(Docket No. 56-9 at 1, 3, 5 & 7).

To be sure, Plaintiffs could not have discussed amongst themselves each and every untoward comment allegedly made by Mr. Campbell because some Plaintiffs were not employed at the Franklin La Quinta when certain statements were alleged to have been made. But it does not follow, as Defendant suggests, that the "affidavits blatantly contradict [Plaintiffs'] sworn deposition testimony" because there was discussion in the depositions about how Plaintiffs would talk about what Mr. Campbell did or said.

Credibility is going to be key in this case, not only on the issue of whether (and when) Plaintiffs discussed what Mr. Campbell allegedly said, but also on the issue of what each Plaintiff heard. As it stands, the record can be read as suggesting that Mr. Campbell was prone to making racially offensive comments, treating black employees less favorably than whites, and that his statements and comments permeated the workplace. On the other hand, the deposition testimony about Mr. Campbell's alleged statements is strikingly similar, follows closely what was alleged in the Amended Complaint, and appears almost parroted. Moreover, some of the deposition testimony is internally inconsistent and inconsistent with the testimony of other Plaintiffs. Since this case is scheduled for a bench trial, the Court will make credibility determinations based upon the testimony

13

at trial. It cannot assess credibility on the summary judgment record.

## V.

While the Court has concluded that Plaintiffs have provided enough to establish triable issues on their claims that they were subjected to a hostile work environment, this does not end the inquiry because the Tennessee Supreme Court has specifically held that the Faragher-Ellerth defense applies to such claims under the THRA. Parker v. Warren County Util. Dist., 2 S.W.3d 170, 176 (Tenn. 1999). This defense, based upon Burlington Industries Inc. v. Ellerth, 524 U.S. 742 (1998) and Faragher v. City of Boca Raton, 524 U.S. 775 (1998), provides that employers are not automatically liable for harassment perpetuated by their employees, with the parameters of the defense defined by whether the alleged harasser is a co-worker or a supervisor.

In the absence of a tangible employment action, an employer is liable for a hostile work environment created by a supervisor unless it shows that it (1) "exercised reasonable care to prevent and correct promptly any sexually harassing behavior," and (2) "the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise.'" Ellerth, 524 U.S. at 765. "Generally, an employer satisfies the first part of the Faragher/Ellerth two-part standard when it has promulgated and enforced a . . . harassment policy." Gallagher v. C.H. Robinson Worldwide, Inc., 567 F.3d 263, 275 (6th Cir. 2009). "'[A]n effective harassment policy should at least: (1) require supervisors to report incidents of . . . harassment; (2) permit both informal and formal complaints of harassment to be made; (3) provide a mechanism for bypassing a harassing supervisor when making a complaint; and (4) provide for training regarding the policy.'" Id. (citation omitted).

This Court has little trouble in concluding that Defendant has met the first prong of the

14

Faragher/Ellerth defense. La Quinta has an anti-harassment policy that Plaintiffs do not challenge.

However, the Court finds that questions of fact exist as to whether the Plaintiffs unreasonably failed to take advantage of the system that La Quinta had in place. Plaintiffs claim that they (1) voiced objections to Mr. Campbell about his conduct; (2) complained to Michelle Armour, the Assistant General Manager, who herself allegedly witnessed some of the conduct; (3) called (or attempted to call) the hotline for reporting harassment; and (4) left messages which were not returned. Further, Plaintiffs claim that while Stacy Babl, La Quinta's Manager of People Solutions, traveled twice from Milwaukee to investigate, she did so only after charges had been filed with the Tennessee Human Rights Commission and again after the initial complaint was filed in state court. Even then, Plaintiffs assert, Ms. Babl did not inquire about the racially-charged environment, but instead focused on complaints about assignments, scheduling, and the number of hours worked.

Whether Plaintiffs made the efforts to complain that they assert, and whether Ms. Babl was given sufficient information and an opportunity to investigate Mr. Campbell's allegedly offensive comments and actions present factual issues. Those issues are compounded in this case because, in their deposition testimony, Plaintiffs often could not recall when Mr. Campbell allegedly made certain statements or when they allegedly called the hotline or complained to either Mr. Campbell or Ms. Armour. Once again, credibility is going to be key and it may very well be that Defendant can show by a preponderance of the evidence that Plaintiffs failed to take advantage of the policy that La Quinta had in place. "Nonetheless, the Faragher/Ellerth defense should not be applied as a matter of law if circumstances suggest that there are questions of material fact for [the factfinder] to decide." Shields v. Fed. Exp. Customer Info. Serv. Inc., 499 F. App'x 473, 481 (6th Cir. 2012).

**VI.**

15

Based upon the foregoing, Defendant's Motions for Summary Judgment will be granted, except with respect to each Plaintiff's hostile work environment claim under the THRA.

An appropriate Order will be entered.

_____
KEVIN H. SHARP
UNITED STATES DISTRICT JUDGE